## JOHN L. BLAIR *et al.*
*v.*
## WILLIAM J. CHAMBLIN *et al.*

1. REDEMPTION BY JUDGMENT CREDITORS—*effect of a premature redemption and levy.* Where a judgment creditor, in endeavoring to redeem from a prior execution sale, pays the redemption money and procures the levy to be indorsed upon his execution, before the expiration of the year allowed to the debtor to redeem, this is an irregularity; but if the sale under such levy should not be made until after the expiration of the year, the debtor not having redeemed, and the prior purchaser acquiesces, waives the irregularity of the premature redemption and levy, and receives the redemption money, the judgment debtor cannot challenge the redemption.

2. FORMER DECISIONS. Nor is this ruling a departure from the authority of the cases of *Merry* v. *Bostwick*, 13 Ill. 398, and *Watson* v. *Reissig*, 24 id. 281, in which it is held that the judgment debtor's right of redemption, within the year, cannot be levied upon and sold under execution.

3. Should the judgment debtor, in such a case, exercise his right of redemption from the first execution sale within the year, then the judgment creditor cannot consummate his redemption thus prematurely made; but if the debtor fails to redeem within the year, the irregularities of the premature redemption by the judgment creditor become, as to the debtor, *res inter alios*. After that, the first purchaser from whom the redemption is sought to be made can alone complain; and if he makes no opposition, it will be presumed that he acquiesced in the redemption, and waived whatever irregularities had intervened.

4. It is by no means certain that the mere fact that the money was paid by the redeeming judgment creditor to the sheriff and the levy indorsed by him prematurely, when for the purposes of advertisement and sale they were treated as not having occurred until the year had expired, would be such an irregularity as would entitle even the purchaser from 'whom redemption is made, to resist such redemption as void. Upon this question no definite opinion is given.

5. SAME—*to what time the rights of the purchaser under the redeeming creditor, relate.* The rights of a purchaser under an execution sale made by a judgment creditor who has redeemed from a prior sale on execution, relate back to the time when the lien under the proceedings from which the redemption was made, first attached.

6. BILL TO REDEEM, *by such purchaser, from a. prior trust-deed—whether he must also redeem from a junior lien held by the same person.* Where a purchaser under judgment and execution files his bill in chancery to redeem from a prior trust-deed, he will not be required also to redeem from an absolute deed held by the same party which was given to secure other indebtedness than that secured by the trust-deed, the absolute deed not having been recorded until after the lien, under which the execution purchaser claims, attached, although it was made prior to that time.'

7. Should such execution purchaser seek to have the absolute deed canceled, then, of course, he must pay all the debts secured by it, before this prayer would be granted; but in seeking only to redeem from the trust-deed, which was a prior lien, he may leave the junior lien in force, for whatever it may be worth.

8. SAME—*how much the party redeeming must pay—relief in chancery against penalties.* In the exercise of the power of a court of chancery to relieve against penalties, each question must depend upon its own equities. The cases in which such relief has been granted, have generally arisen under contracts in which the performance of some collateral act, like the conveyance of land, has been sought to be secured by an agreement that, in the event of non-performance, a stipulated sum of money should be paid. In such cases relief will be granted against an unreasonable penalty, where a full compensation can be otherwise given for the non-performance of the contract.

9. In this case, a purchaser under execution filed a bill to redeem from a deed of trust, which was an elder lien, and which was given to secure a note drawing twenty-five per cent. after maturity, as a penalty for delay in payment after that time. The holder of the deed of trust had purchased the note it was given to secure, to protect another lien which he held on the same premises, which was' prior in date to the lien under which the execution purchaser claimed, 'but a junior lien, by reason of not being recorded in proper time. The party seeking to redeem asked relief against the twenty-five per cent. penalty provided for in the note secured by the deed of trust, being willing to pay only ten per cent. in lieu thereof, but at the same time insisted upon cutting off the junior lien, although it was of a prior date. It was held not to be a case calling upon a court of equity to relieve against the penalty and to require

the holder of the trust-deed to accept less than the amount due by the terms of his contract. It was merely a contest between creditors, in which each was at liberty to stand on his legal rights.

10. SAME—*whether party redeeming must pay for improvements made on the premises, and taxes paid thereon.* At the time the absolute deed was made, the circumstances were such as would go to show that neither party expected the debtor would redeem the land, and the grantee, who afterward purchased in the note secured by the trust-deed, went into possession and made valuable improvements, which he was regarded as having done in good faith, under the belief that he owned the land. So, it was held that the party seeking to redeem from the deed of trust, claiming under the intervening lien, must pay the value of the permanent improvements at the date of the redemption, made by the holder of the absolute deed and the deed of trust prior to the filing of the bill, and also all taxes paid by him, with interest from the date of payment, must be refunded to him.

APPEAL from the Circuit Court of Mason county; the Hon. JAMES HARRIOTT, Judge, presiding.

The opinion of the Court contains a sufficient statement of the case.

Mr. DAVID A. SMITH, for the appellants.

Mr. WILLIAM H. HERNDON, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This is a bill brought by the appellants, as purchasers under judgment and execution, to redeem from a prior deed of trust. The material facts, so far as they affect the opinion of the court, are as follows:

On the 12th January, 1858, one Tunison executed to one Wright his note for $1,250, falling due in one year, bearing ten per cent. interest from date, and ending with these words: "And if this note is not paid at maturity, the whole amount then to draw twenty-five per cent. per annum thereafter as damages for delay." Tunison also executed to Wright a deed of trust upon 720 acres of land in Mason county, to secure the payment of this note, which was recorded February 6, 1858, and was the oldest lien upon the land.

At the April Term, 1859, of the Alton City Court, one Barry recovered a judgment against Tunison for $926.63, upon which execution was issued to the sheriff of Mason county, and by him levied on the same land, and a certificate of levy duly filed in the recorder's office at ten o'clock A. M. on the 3d of June, 1859.

On the same day, but a few hours later, Chamblin, the appellee, filed for record an absolute deed from Tunison and wife to himself, bearing date May 30th, 1859, and being for a nominal consideration of one dollar. This deed was given to secure a general indebtedness from Tunison to Chamblin, which, by an award made between them on the 16th of July, 1860, was determined to be $1,552.48. On the 29th of August 1859, Chamblin bought of Wright the above mentioned note from Tunison to him secured by the deed of trust.

On the 25th of June, 1859, the land was sold under the Barry execution and bid in by him for the amount of his judgment.

At the October Term, 1859, of the Madison Circuit Court, Blair, Ballinger & Co., appellants, recovered judgment against Tunison for $751.89, and on the 9th of June, 1860, redeemed from the Barry sale, and on the 1st of August, 1860, sold under their own execution. They were the purchasers at this sale, and the sheriff made them a deed.

They then filed their bill in the Mason Circuit Court against Chamblin as owner of the Wright note and deed of trust, to redeem said deed.

Chamblin answers, setting up a large indebtedness from Tunison to himself, independently of the Wright note, and setting up the absolute deed as security for the general indebtedness.

Tunison was party defendant to the original bill, but dying pending the proceedings, his wife voluntarily came in and had herself made defendant as his administratrix. She also filed a cross-bill, claiming the right to redeem as dowress.

What we have said presents the facts and pleadings so far as they are important to the decision of the case. The Circuit

Court decreed the complainants to pay the Wright note and twenty-five per cent. interest, and also the debt secured by the absolute deed, from which decree they appealed.

It is urged by the counsel for the appellee that the appellants proceeded so irregularly in redeeming, as judgment creditors, from the Barry sale, that they acquired no title under the sheriff's deed, and hence have no right of redemption from the Wright deed of trust. The irregularity consisted in levying their execution and paying the redemption money to the sheriff before the expiration of a year from the day of sale. The subsequent proceedings seem to have been regular, as the sale was made on the first of August, and the year had expired on the 25th of June.

Unquestionably, Tunison, the judgment debtor, or rather Chamblin, his grantee, had the right, within the year, to disregard the steps taken by the appellants with a view to redemption, and himself to redeem. Had he done this the appellants could not have consummated their redemption. This he did not choose to do, but allowed the title acquired by Barry, at the sale under his execution, to. ripen either in Barry or in Blair, as the redeeming creditor; and, so far as Chamblin was concerned, it did not matter to which of them the sheriff should make his deed. Chamblin's rights were gone, by his failure to redeem within the year, except such rights as he might hold paramount to the judgment.

Whether the irregularities of Blair in redeeming would have enabled Barry to treat the redemption as invalid, and insist upon a deed to himself, it is needless to decide. There is nothing in the record before as to indicate that Barry did not acquiesce in Blair's proceedings, and receive the redemption money. The sheriff deeded to Blair, and it is not intimated in the record, or arguments of counsel, that any opposition was made by Barry. We must presume then that he acquiesced in the redemption, and waived whatever irregularities had intervened. He at least does not complain, and he is the only person who has the right to do so. The moment the year expired, the irregularities became, as to Chamblin, *res inter alios.* Blair,

with the consent of Barry, is now substituted to all the rights of the latter, and has precisely the same standing in court for the purposes of this bill that Barry would have had.

Against this view of the validity of Blair's redemption, counsel have cited the cases of *Merry* v. *Bostwick*, 13 Ill. 398, and *Watson* v. *Reissig*, 24 id. 281. The principle established by those cases is, that the judgment debtor's right of redemption, within the year, cannot be levied on and sold under execution, since to permit this would destroy his right to redeem, which is intended to be personal and exclusive in him during the twelve months. In sustaining the redemption by Blair, we do not depart from the authority of those cases, for the sale under his execution was not made until after the expiration of the year. The only irregularities consisted in paying the redemption money to the sheriff, and causing him to indorse the levy on the execution within the year, but the sale was not made until thirty-five days after the expiration of the year, and therefore occurred precisely as it might have done if the levy had been made, and the redemption money paid on the first day after its expiration. For the purposes of the sale, the parties treated the redemption and levy as having been made after the year had closed. We are not prepared to admit that the mere fact that the money was paid to the sheriff and the levy indorsed by him prematurely, when for the purposes of advertisement and sale they were treated as not having occurred until the year had expired, would be such an irregularity as would entitle even the purchaser from whom redemption is made to resist such redemption as void. It might be contended with much force that the redeeming creditor who had paid his money prematurely might, at the end of the year, go to the sheriff, withdraw his deposit, and at the same moment redeposit the money with the sheriff, and cause him to strike from the execution the premature levy, and at once write out a new levy. Yet, if this form would cure the irregularity of the levy, why not at once hold that the redemption money, prematurely deposited with the sheriff, is to be considered as taking effect, as a redemption, at the earliest moment when it could become

operative, if the redeeming creditor and the sheriff themselves have thus treated it, in their subsequent proceedings?

However this question may be decided, in a contest between the redeeming judgment creditor and the purchaser, whose purchase is redeemed, and in regard to it we express no opinion, we entertain no doubt that, if the latter acquiesces, waives the irregularities, and receives the redemption money, the judgment debtor cannot challenge the redemption. As we have already said, his rights are gone when he allows a year to elapse without offering to redeem, and whether the sheriff conveys to the first purchaser or to the redeeming creditor is a matter in no wise affecting the judgment debtor. His title has passed to one of them; and, if they have no contest, and the first purchaser has consented, by accepting the redemption money, that the redeeming creditor shall be substituted to his rights and receive the sheriff's deed, the judgment debtor cannot be permitted to question the propriety of his proceeding. We have said more upon this subject than we should have deemed necessary, but for the apparent confidence with which counsel have urged the point.

The next question is as to the terms upon which Blair shall be permitted to redeem from the deed of trust now held by Chamblin. The appellee contends that the indebtedness due from Tunison to Chamblin, independently of the Wright note, and which the absolute deed, recorded subsequently to the record of the Barry levy, was doubtless given to secure, should be paid by the appellants before they are permitted to redeem the deed of trust. We are unable to perceive upon what principle this claim can be sustained. The appellants now own the land by a title which relates back to the filing for record of Barry's certificate of levy, and which is, therefore, paramount to any rights the appellee can claim under his absolute deed. If the appellants seek to have that deed canceled, they must, of course, pay all the debts secured by it before this prayer can be granted. But they only ask to redeem from the deed of trust, on the ground that it is an incumbrance older than their own title. The absolute and junior deed they leave in force, for

whatever it may be worth, and this, under the operation of our registry laws, they have the right to do.

How much, then, must Blair pay to redeem from the deed of trust? The note secured by it drew twenty-five per cent. after its maturity, at one year from its date. The appellant contends that, in redeeming this debt, the interest should be computed at only ten per cent. instead of according to the terms of the note. He admits that the contract is not usurious, but insists that the twenty-five per cent. is to be regarded as one of those penalties from which a court of chancery will relieve.

The cases in which courts of chancery have relieved from penalties have generally arisen under contracts in which the performance of some collateral act, like the conveyance of land, has been sought to be secured by an agreement that in the event of non-performance, a stipulated sum of money should be paid. In such cases, relief will be granted against an unreasonable penalty, where full compensation can be otherwise given for the non-performance of the contract. But, in the exercise of a power of this character, every case must necessarily depend upon its own equities, and, while the general principle is settled as above stated, a court of chancery may still withhold its aid, and leave the parties to their legal rights, if the peculiar circumstances of the case before it are not such as to call for its interposition on equitable grounds. In the case before us, we may concede that the provision for the payment of twenty-five per cent. may be regarded as in the nature of a penalty; and yet, as this case stands, we do not consider Blair entitled to insist that Chamblin shall accept less than the sum due by the terms and letter of his contract. For this is not a case in which an oppressed debtor is seeking relief against an unconscionable contract extorted from him by his creditor. Tunison, the maker of this note, is not complaining, nor is Wright, the payee, defending. It is a race between two creditors of an insolvent man, each seeking to avail himself of all his legal rights. Blair having been substituted to the rights of Barry, and Barry having filed for record his certificate of levy a few hours before the filing of Chamblin's absolute deed, Blair's title cuts off that

deed though made before his levy. There is certainly no natural equity in thus preferring the junior to the senior lien, and it is done only through our registry laws. Blair has, however, a perfect right to assert the priority which the law gives him, although he thereby deprives Chamblin of all security for the payment of so much of Tunison's debt as was protected by the absolute deed.

But Chamblin's deed of trust is older, both in date and record, than the levy under which Blair claims. He bought this of Wright after Tunison had conveyed to him, and was obliged to buy it in order to protect his own lien, the deed of trust having matured. He paid for it the full amount due on its face, as the witnesses state, in gold. It drew twenty-five per cent. per annum after its maturity, as damages, and this contract, it is admitted, was not usurious nor illegal. Now, in a case where Blair avails himself of his legal right, under the registry law, to cut off a lien older in date than his own, and thereby deprive Chamblin of all security for more than half of his debt, we do not perceive why Chamblin should not be permitted to stand in turn upon his legal rights, in regard to the deed of trust, and insist that he should not be required to surrender it without full payment of what is due by the strict terms of a contract confessedly legal. Blair insists that he stands in Tunison's shoes and is clothed with all his rights. But he would not be willing to push this argument, in all its aspects, to its legitimate conclusion, since Chamblin could not be compelled to yield the land to Tunison, as he must to Blair, until the absolute deed, as well as the deed of trust, had been redeemed. Blair would not be willing to take this burden upon himself, even for the sake of relief from all interest on the deed of trust above ten per cent. As already said, we regard the case as merely a contest between creditors, in which each is at liberty to stand upon his legal rights and seize whatever *tabula in naufragio* may come in his way. Blair's relation to this deed of trust is that of a volunteer; and, while he has a clear right to redeem it, we do not think the case of such a character as to justify a court

34—39TH ILL.

of chancery in requiring Chamblin to accept less than the amount due by the terms of his contract.

The only remaining question presented by this record relates to the improvements made by the appellee upon the land. At the time Tunison made the absolute deed to the appellee, he was largely indebted to the latter, apart from the Wright note. The presumption from the record is, that, at that time, it was not expected by either party that Tunison would redeem the land. The appellee took possession, and made valuable improvements. It is difficult to avoid the conclusion that he did this in good faith, under the belief that he owned the land, and this would bring the case within the rule laid down in *McConnell* v. *Hollowbush*, 11 Ill. 70. Certain it is, that these improvements were made under such a title as is contemplated by our ejectment statute, and, as against this redeeming creditor, the equity is certainly as strong as it would be against the owner of a paramount title, evicting in an action of ejectment.

In redeeming, the value of the permanent improvements at the date of the redemption, so far as they were made by Chamblin prior to the filing of the bill herein, and also all taxes paid by Chamblin with interest from the date of payment, must be refunded to him.

There is nothing in the record showing the perception by the appellee of rents and profits, nor is any question raised in regard to them.

The decree of the Circuit Court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*