## JOHN LAMB, impleaded, etc.,

*v.*

## MINERVA RICHARDS, Administratrix, etc.

1. REDEMPTION FROM MORTGAGE SALE — *rights of judgment creditor.* Where A mortgaged certain lands to B, and subsequently conveyed the same to C, who in turn mortgaged them to D, and then A died, and B foreclosed his mortgage, making the heirs and administrator of A and the grantees, mortgagors and mortgagees, subsequent to his mortgage, parties to the suit, and the premises were sold to B on the foreclosure decree, who held the certificate of purchase until after the lapse of twelve months from the time of sale, without any person attempting to redeem within that time, — *held,* that B, after the lapse of twelve months from the time of sale, held the mortgaged property discharged of all right in any person, entitled by statute to redeem within such period; and that, in such case, where E, a judgment creditor, in good faith redeemed from B, before the lapse of fifteen months from the day of sale, E, by such redemption, was subrogated to all the rights of B, and took the property discharged of any right in any person allowed by statute to redeem within one year after sale made.

2. FORMER DECISIONS. *Williams* v. *Tatnall,* 29 Ill. 565, considered and explained; also, the cases of *Sweezy* v. *Chandler* and *McLagan* v. *Brown et al.,* 11 id. 445, 519.

APPEAL from the Circuit Court of Morgan county; the Hon. D. M. WOODSON, Judge, presiding.

This was a suit in chancery instituted in the Morgan county Circuit Court, by the appellee, as administratrix of the estate of

her husband, George M. Richards, to foreclose a certain mortgage, executed by one William Lamb and wife, to the said George M. Richards.

The facts in the case are fully stated in the opinion.

Mr. H. B. McCLURE and Mr. I. J. KETCHUM, for the appellant.

Mr. M. McCONNEL, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 6th of May, 1860, one George M. Richards, being then the owner of certain real estate in Morgan county, mortgaged it to Murray McConnel, to secure certain indebtedness due the latter. In October, 1860, Richards conveyed the premises to William Lamb, and Lamb executed to Richards certain notes for the unpaid purchase-money, and a mortgage upon the premises. Subsequently, McConnel filed a bill to foreclose his mortgage, making parties Minerva Richards, the administratrix of the mortgagor, who had in the mean time died, as also his heirs-at-law, and William Lamb, the purchaser. A decree of foreclosure and sale was rendered at the September Term, 1862, of the Morgan Circuit Court, on the 27th of December, 1862, the lands were sold to McConnel for $2,758.71. Neither the administratrix nor the grantee redeemed within the year, but after that time, and before the expiration of fifteen months, one Joseph R. Askew, a judgment creditor of William Lamb, redeemed from the sale, and the premises were then sold on his execution, and deeded to him by the sheriff. McConnel accepted the redemption money, and Lamb attorned to Askew. Subsequently Askew sold and conveyed to John Lamb, who went into possession. Minerva Richards now files this bill, as administratrix, against John Lamb, asking that the premises be sold to pay the mortgage executed by William Lamb. The court so decreed, first, applying as a credit on that mortgage, the amount paid by Askew, in redeeming from the sale to McConnel. John Lamb brings the record to this court.

It is to be first observed, that the pleadings do not aver, nor do the proofs show, that there was any collusion between Askew and William and John Lamb, for the purpose of evading the payment of William Lamb's notes to Richards, or that John took the title from Askew for the benefit of William. So far as this record shows, these proceedings have all been in good faith, though it must be admitted there are circumstances connected with the case which cast some suspicion upon it, and in reversing, we shall remand with leave to the complainant to amend her bill, for the purpose of bringing this question before the court, if she desires.

The first question on the record as it stands, relates to the right of Askew to redeem as a judgment creditor of William Lamb. The mortgage had been made by Richards. Before McConnel foreclosed, Richards had conveyed to William Lamb. The 24th section of the statute of judgments and executions gives to the "mortgagor, his heirs, executors, administrators or grantees" the right of redemption within the twelve months, and upon their failing to redeem, the same section gives the right to judgment creditors. This right of redemption has always been fostered in the courts by a liberal construction of this statute, since it tends to save from sacrifice the property of failing debtors, and enables a larger number of creditors to secure payment of their debts. Upon this principle this court has several times held, as in *Sweezy* v. *Chandler*, 11 Ill. 445, that it was unnecessary the judgment under which redemption is made should be a lien on the land redeemed, thereby applying a more liberal rule than that laid down by the courts of New York, under the more stringent language of their statute, from which ours is substantially borrowed. But even if the right of redemption were confined to those creditors whose judgments were liens, this right existed in Askew. Richards, before the foreclosure, had sold and conveyed to William Lamb, and against him Askew had a judgment. But for the sale under the mortgage, he could have subjected this land to the payment of his debt; and it certainly comports with the spirit as well as the letter of the law, to permit him to remove the obstacle in his

path by redeeming from the sale under the mortgage. We by no means say that a judgment creditor of the mortgagor could not also redeem. It may be a reasonable construction to hold that, as either the mortgagor or his grantee can, by the express language of the statute, redeem within the twelve months, so, when their rights are gone, a judgment creditor of either may redeem. But if it is found necessary to confine the right to one of them, it obviously belongs rather to the judgment creditor of the grantee, by virtue of his lien, than to the judgment creditor of the mortgagor.

What, then, was the position of Askew after redeeming from the sale to McConnel? By the numerous and uniform decisions of this court, beginning with *Sweezey* v. *Chandler* and *McLagan* v. *Brown*, 11 Ill. 445 and 519, and coming down to several cases recently decided and not yet reported, among which is *Blair* v. *Chamblin* of the January Term, 1866 (39 Ill. 521), the redeeming judgment creditor is subrogated to the rights of the purchaser from whom he redeems. The case of *Williams* v. *Tatnell*, 29 Ill. 565, does not really militate with this doctrine. In that case there was first an unrecorded mortgage, then a judgment in favor of Hays, who had, however, at the date of his judgment, actual notice of the unrecorded mortgage, and then a judgment in favor of Williams. But before the latter obtained his judgment, the mortgage was recorded. There was, therefore, notice to both judgment creditors of the elder lien of the mortgage. Hays sold under his judgment and became himself the purchaser, and Williams redeemed as a judgment creditor. The only question in the case was, whether the mortgage was subordinate to the title acquired under the redemption, and the court held, it clearly was not, because both judgments were junior in date and the claimants affected by notice. It was, however, urged in argument, that Williams, the redeeming creditor, was to be considered not merely as subrogated, by the redemption, to the same rights which Hays had, but that he must be accorded a better position, by being treated as having been a bidder without notice at the sale under Hays' judgment, and in support of that

position counsel cited the twenty-second section of the statute of judgments and executions. It was in answer to that position, that the court traced the history of our legislation on this subject, and came to the conclusion that the introduction of that section into the Revised Statutes of 1845, was an inadvertence of the compiler. But the court did not deny that, independently of that section, and on the most familiar principles of equity law, Williams, by his redemption from Hays, was subrogated to the position and rights of the latter, though he could not claim any better or higher. On the contrary, the court constantly recognizes in the opinion the doctrine of subrogation. It says at the outset " the first and important inquiry is, was Hays chargeable with notice of this mortgage ?"

Now, as Williams had paid Hays' debt by redeeming, and as his own judgment was confessedly junior to the mortgage, this inquiry, instead of being " the first and important " one, would have been wholly unimportant unless the court considered that Williams took by subrogation the position of Hays. Again the court say: " Had Hays not been chargeable with notice, so that his judgment had become a prior lien to the mortgage, which attached to the entire estate, then, indeed, a different question would be presented. But we do not now propose to determine what estate the redeeming judgment creditor, whose judgment is junior to the mortgage, acquires by a sale under such junior judgment upon a redemption from a sale under a judgment senior to the mortgage." That question was not presented by the record. The court, in conclusion, in referring to the cases of *Sweezy* v. *Chandler* and *McLagan* v. *Brown*, 11 Ill. 445 and 519, says, that in those cases this twenty-second section was alluded to merely as a make-weight, and that the cases were decided on other grounds. The court, so far from overruling those cases, affirms their decision, and only questions the reference in the opinions to this section of the statute.

The other grounds upon which those decisions are left to rest are, of course, the conceded principle, that when a junior is compelled, in order to protect himself, to pay a senior incumbrance, he is substituted to the rights and position of such

senior incumbrancer. This is natural equity and has often been enforced by the courts. See *Flack* v. *Kelly*, 30 Ill. 471, and cases there cited. We have said this much in reference to the case of *Williams* v. *Tatnall*, because we do not wish that case to be considered as conflicting with the prior and subsequent decisions of the court.

In this case, assuming, as we must do, on this record, that Askew and John Lamb acted in good faith, the latter now stands in the shoes of McConnel, and has the same title to these premises, as against complainant, that McConnel would have had if no redemption had been made. The great hardship and injustice of any other rule are very apparent. He has paid a large sum of money in redeeming from the elder lien. The court below found $5,216.18 to be due complainant on the mortgage, and gave a decree for that amount. If this should equal the value of the land, the money paid by Askew, in redeeming, and by John Lamb to Askew, will be wholly lost to them. In the rule we apply, there is no hardship or wrong. The administratrix might have redeemed within the year, and thus, while paying the debt of the intestate, have saved the lien of the second mortgage. We do not overlook the fact, that McConnel, when he foreclosed his mortgage, also held the junior mortgage made by William Lamb, and the notes secured by it; but he held them merely as collateral security for the payment of the debt due him, and, after he received the redemption money, redelivered them to the administratrix. The notes and mortgage were then, as now, the property of the estate of Richards. He was the mortgagor of McConnel and the mortgagee of William Lamb, and his administratrix and heirs, being made parties to McConnel's bill, lost all claim to the land under either mortgage by their failure to redeem. If McConnel had, in fact, owned both mortgages and had wished to preserve an ultimate right of redemption under the junior mortgage, and thereby prevent its being cut off by a creditor redeeming under the first, we do not see why that might not have been provided for in the decree. But, instead of that, his object then was to cut off the rights of the representatives of

Richards, under the one mortgage as mortgagors, and under the other as mortgagees. This he did, and at the end of twelve months from the sale, held the premises discharged of their claims, and when Askew redeemed, he succeeded to McConnel's rights. If Askew had not redeemed, McConnel would have held the premises as against the junior mortgage. The lien of that mortgage was cut off by the foreclosure of McConnel, as to all parties to his bill, and it matters not to the representatives of Richards whether McConnel or Askew obtained the title. When McConnel accepted the redemption money, he virtually assigned his title to Askew.

On the case now made, the bill would have to be dismissed; but the complainant will have leave to amend her bill, on payment of costs, if she should desire so to do.

*Decree reversed.*