WILLIAM P. BRADSHAW, IMPL'D, ETC.,

v.

SETH T. SAWYER AND ROBINSON S. SAWYER, PART-
NERS.

*Estoppel* in Pais—*Admissions—Sale on Execution—Redemption—
Fraudulent Conveyances—Bill in Equity—Evidence.*

1. Admissions which have been acted upon by others are conclusive
against the party making them. Admissions implied from the open and
general conduct of the party, to be estopped by them, are within this rule.

2. The purchaser of a lot at a sale under execution, who has accepted the
redemption money paid by one claiming under a trust deed on said lot, is
estopped, when seeking to enforce another judgment, from denying the
validity of such trust deed.

[Opinion filed June 7, 1887.]

APPEAL from the Circuit Court of Madison County; the
Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. A. W. METCALFE, for appellant.

Messrs. R. S. SAWYER and WISE & DAVIS, for appellees.

GREEN, J. On March 6, 1885, appellees filed their bill in
chancery in the court below, alleging they recovered a judg-
ment against Geo. T. Brown for $160 and costs of suit at
the February term, 1879, which judgment became a lien on
the real estate of said Brown in June, 1879; that afterward
an execution was issued upon said judgment, and duly levied
upon lot 39, in Penitentiary Plat Addition to Alton; that
afterward on November 29, 1879, said lot was struck off and sold
to them by the Sheriff by virtue of said execution, and they
received a certificate of purchase for said lot, and the same not
having been redeemed from said sale they received Sheriff's
deed for said lot March 8, 1881; that on or about April 6, 1878,
Brown executed a deed of trust on said lot, to secure a note of

even date for $3,000, payable one year after date, with ten per cent. interest, to the firm of Metcalfe & Bradshaw, composed of Andrew W. Metcalfe and William P. Bradshaw; that on or about July 26, 1879, and after the lien of said judgment, Metcalfe & Bradshaw caused said lot to be sold under said deed of trust, and at said sale it was sold to Bradshaw for one dollar and he received a deed for it; that on or about January 21, 1880, Bradshaw sold or pretended to sell and convey said lot to Anna S. Clark; that complainants were creditors of Brown long prior to the recovery of said judgment, and said judgment included only a portion of said indebtedness, and were creditors of Brown long prior to the execution and delivery of said deed of trust; that said lot was worth from $500 to $800 at the time complainants purchased it at Sheriff's sale and at the time they obtained said Sheriff's deed; charges that said deed of trust and note secured thereby were made without consideration and for the purpose of defrauding complainants and preventing them from collecting any judgment they might secure against said Brown; and that said Metcalfe & Bradshaw knew at the time they took said note and deed of trust Brown was indebted to the complainants, and therefore, by virtue of the statute, said note and deed of trust were fraudulent and void; that the sale or pretended sale to Clark was but the carrying out of the purpose of defrauding complainants and preventing them if possible from recovering said lot; that Anna S. Clark is not an innocent purchaser of said lot, as the deeds under which Bradshaw claimed title were sufficient to have put her on inquiry. The several deeds mentioned are referred to and made part of said bill by exhibits attached thereto. Metcalfe, Bradshaw and Clark were made defendants, and the prayer of the bill is that the deed of trust and the deed from Keowen, trustee, to Bradshaw, and his deed to Clark be each and all decreed to be null and void, and the title to said lot be vested in complainants, and that an account be rendered by Bradshaw and Clark of the rents and income of said lot since date of Sheriff's deed, and that Bradshaw and Clark, or either of them, be directed to pay to complainants, what, if anything, shall upon such account be due from them

or either of them; or if, upon the hearing, it shall appear Clark is an innocent purchaser of said lot, in that event, complainants *pray* that said Metcalfe & Bradshaw, or Bradshaw, be ordered to pay complainants the value of said lot with interest from March 8, 1881.

Metcalfe, by his answer, admits execution of deed of trust but denies the same was fraudulent as stated, but avers it was made in good faith and for a valuable consideration; denies knowledge of any indebtedness from Brown to complainants; admits he knew complainants claimed such indebtedness, which Brown did not admit when deed of trust was made; denies judgment, but states the lot was sold on April 15, 1878, on execution in favor of complainants against Brown for $346.55, and on June 18, 1879, was redeemed under deed of trust by Metcalfe & Bradshaw, as provided by law, by payment to the Sheriff for complainants of $382.60 in full for accrued interest and costs of redemption, which was paid to and accepted by complainants with full knowledge of said redemption, and insists they are thereby estopped from attacking said deed of trust or redemption; denies sale as alleged under execution from Alton City Court; admits sale to Bradshaw; denies it was pretended, but avers it was a valid sale, on a consideration amounting to about $500; on information and belief alleges Clark was an innocent purchaser for value, and disclaims any interest in said lot except as stated.

Anna S. Clark by her answer denies all the allegations in bill, except that she admits purchase of lot from Bradshaw at the time mentioned for a valuable consideration paid, without any knowledge of fraud as charged, and supposed he was the legal owner and had good right to sell said property to her.

Bradshaw admits by his answer execution of deed of trust; denies it was fraudulent; avers it was made in good faith for a valuable consideration, and not to cheat complainants; denies knowledge of indebtedness from Brown to complainants as alleged at time deed of trust was executed, but insists such knowledge would not be a valid reason why the same should not be executed; denies judgment, execution and sale from the Alton City Court, but alleges said lot was sold April 15, 1879,

on execution in favor of complainants, and against Brown for $346.55, and that on June 18, 1879, defendants, Metcalfe & Bradshaw, redeemed under said deed of trust, said lot from said sale as provided by law, and paid the Sheriff for complainants $382.60 in full for purchase money, accrued costs and costs of redemption, which sum was paid to and accepted by complainants with full knowledge of the redemption, the certificate being on file in the clerk's office, and insists complainants are estopped from attacking said deed of trust, redemption or sale; admits he purchased said lot at sale under deed of trust and received deed; denies sale or deed was pretended or fraudulent, but alleges it was a valid sale and good deed and insists complainants by receiving said redemption money are estopped to impeach its validity; that in addition to one dollar, he paid for said lot the amount of redemption money, costs and charges of sale, making about $500; admits conveyance to Clark; denies it was a pretended sale or deed; alleges it was *bona fide* for value, without knowledge by her of said alleged fraud and collusion; denies the right to relief and equity in the bill.    To these answers a general replication was filed, a hearing was had and the court by its decree found the complainants vested with the title to said lot by virtue of Sheriff's deed of March. 8, 1881; that complainants were creditors of Brown prior to and at the time of the making of note and deed of trust to Metcalfe & Bradshaw; that said note and deed of trust, the deed from Keowen, trustee, to Bradshaw, and deed from him to Clark, for said lot, were each and all made to hinder, delay and defraud complainants, but that Clark was an innocent purchaser and that Metcalfe was not liable to complainants; that Bradshaw was liable to them for the value of said lot, $650, at time complainants received their deed for the same March 8, 1881; decrees that Bradshaw pay said sum to complainants with interest, in thirty days, and costs. From this decree Bradshaw appealed. Appellant insists if complainants were entitled to any relief, the sum decreed to be paid by Bradshaw was too large and for that reason, of itself, the decree should be reversed; and further, complainants were estopped by their acts and conduct from denying the

validity of the trust deed of said lot made by Brown to secure his note for $3,000, payable to Metcalfe & Bradshaw. These two questions are the only ones necessary to be discussed and we will refer to so much of the evidence as seems material in determining them.

It appears from the record Brown owned lot 39 (the lot in controversy) on April 3, 1878. On that day appellees recovered a judgment against him for $965 and costs. Afterward on February 14, 1879, appellees recovered another judgment against him for $160, and claim the right to recover from Bradshaw the value of said lot, as purchasers thereof at the sale made to satisfy the execution issued upon the last mentioned judgment. On April 11, 1878, five days after the date of the first judgment, the trust deed made by Brown was recorded, the judgment then being a lien on said lot. An execution was issued on said judgment, and on May 11, 1878, was levied upon seven lots, including lot 39, and at the sale under this execution made June 19, 1878, appellees purchased six of the lots for $700 and lot 39 for $346.56. On June 18, 1879, Metcalfe & Bradshaw as the holders and owners of the note for $3,000, secured by said trust deed, redeemed lot 39 from said sale, and on June 21, 1879, appellees received and accepted from the Sheriff the redemption money, $381.10, and gave him their receipt as purchasers at said sale under execution. After such redemption and on the same day, said lot was advertised to be sold by the trustee under said trust deed and was sold to Bradshaw at trustee's sale, July 26, 1879, and deeded to him by the trustee and the deed recorded on that day. As before stated, on February 14, 1879, appellees had recovered their second judgment against Brown and it was in force at the time of said redemption, but no execution was issued on it until October 22, 1879. This execution was levied on said lot October 30, 1879, and sale was made thereunder of said lot to the appellees November 29, 1879. This is the purchase they rely on to sustain their right to recover the value of the lot from Bradshaw; but at the time they so purchased, appellees had received, accepted and still retained the redemption money paid by Brad-

shaw & Metcalfe, which was the full amount appellees bid for said lot, at the former sale, together with the interest. They had notice of the sale and conveyance made by the trustee to Bradshaw July 26, 1879. They did not return or offer to return the redemption money, but with such notice acquiesced in said sale and conveyance, thus further affirming the validity of the trust deed; they permitted Bradshaw to convey said lot to Clark (an innocent purchaser for value) by warranty deed, and by their acts precluded themselves from asserting any title as purchasers at the last sale under execution, as against Clark's title, and yet by this decree recover $650, found by the court to be the full value of the lot, and thereby are to be paid, not only all the debt, interest and costs due from Brown to them, but about $400 more. It is manifest from the evidence such a decree is inequitable, and if appellees were entitled to any relief the amount of the unpaid judgment against Brown with interest and costs was all they should have been decreed. But upon the other question, whether appellees are not estopped by their acts and conduct to receive any relief as prayed for, it seems to us upon this record, the weight of authority is with the appellant.

If the trust deed, claimed by appellees to have been fraudulent because made to hinder and delay creditors, was fraudulent in law, yet if they admitted it to be valid and such admission was acted upon by Metcalfe & Bradshaw and by reason of such admission they were induced to part with their money and do acts which created a liability against them, or either of them, appellees would be estopped by their admission from afterward disputing the validity of the deed, whether such admission was in words or could be fairly implied from acts and conduct.

Admissions which have been acted upon by others are conclusive against the party making them. In all cases between him and the party whose conduct he has thus influenced, it is of no consequence whether they were made in express language to the person himself or implied from the open and general conduct of the party. 1 Greenlf. Ev., Secs. 27, 195, 207.

It is not alleged in the bill or shown by the evidence, that

appellees did not know the true character of the trust deed at the time they received and accepted the redemption money, but it does appear that instrument was then of record and Metcalfe & Bradshaw were named therein as the parties whose debt was secured by it. With this notice furnished by the record, appellees knew the redemption money was paid by those claiming a right to redeem under the trust deed, and for the purpose of wiping out the sale of the lot made to satisfy a judgment lien prior and paramount to that of the deed, and to discharge said judgment lien. Metcalfe & Bradshaw treated said deed as valid by exercising the right to redeem from the sale, and appellees admitted its validity by permitting such redemption and accepting the money. Further, it appears when they accepted this redemption money they had recovered their second judgment, to satisfy which the sale of the lot was made to appellees, and this sale and the title acquired by virtue of it they rely on to maintain the bill; but appellees, under the circumstances mentioned, by accepting the redemption money with this last judgment in force, said to Metcalfe & Bradshaw by their conduct, as plainly as words could have expressed, we recognize the validity of the trust deed securing your debt and your right to redeem by virtue of it, and do not intend to avail ourselves of this last judgment as against said deed. More than this, after the recording of the trustee's deed to Bradshaw July 26, 1879, which was notice to appellees of his purchase of lot 39 at the sale under said trust deed, appellees made no attempt to revoke their admission of its validity, but acquiesced in such sale. Bradshaw was thereby influenced to, and did refund to Metcalfe the one-half of the redemption money paid by him, and also costs, expenses of sale, etc., and afterward, in January, 1880, conveyed the lot for a valuable consideration, by warranty deed to Anna S. Clark, thus increasing the liability to respond to her in damages should her title fail, and now on March 6, 1885, more than five years after such conveyance to her, appellees exhibit this bill and ask to be permitted to retain the money paid them upon the strength of their admission of the validity of said trust deed and the right to redeem under it, and recover also the value

of lot 39. We think their acts and conduct disclosed by the record worked an estoppel conclusive against their right to the relief prayed for in said bill, and by the purchase at the trustee's sale and deed made to him by the trustee, Bradshaw acquired a title that can not be successfully assailed by appellees. Our view of the case is fortified by the decisions of the Supreme Court of this and other States and elementary writers treating of the doctrine of estoppel.

"A much broader scope is given to the doctrine of estoppel *in pais*, both in this country and in England, than formerly obtained, and have established the rule that whenever an act is done, or a statement made by a party, which can not be contradicted without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what would otherwise be mere matter of evidence." "There must be an admission inconsistent with evidence which he has proposed to give or the title and claim he proposes to set up." Smith v. Newton, 38, Ill. 230; Blair v. Chamblin, 39 Ill. 521; Massey v. Westcott, 40 Ill. 160; International Bank v. Bowen, 80 Ill. 541; Hartshorn v. Potroff, 89 Ill. 509; Dazell v. Odell, 3 Hill, 219; Stevens v. McNamara, 36 Maine, 176; Bump on Fraud. Con., 458, 459, 465, 467.

Applying the principle announced in the authorities above cited to the evidence in this record, it appears to us the decree appealed from was erroneous and it is reversed and cause remanded.

*Reversed and remanded.*