SAMUEL MERRY, Plaintiff in Error, *v.* JOHN BOSTWICK and GEORGE SEEBER, Defendants in Error.

ERROR TO MADISON.

A conveyance made to one who is a creditor of the vendor, if made under circumstances of suspicion, and tainted with fraud in law, will be set aside.

If a creditor who has two judgments proceeds to sell on one, and within the same year sells the same property on the other, a judgment creditor, who redeems from the first sale, will hold the property as against the second sale.

The right of a debtor to redeem his property sold on execution, within twelve months, cannot be defeated by selling the same property on a second execution.

MERRY, the complainant, and plaintiff in error, recovered two judgments against Bostwick, one at the January term, 1838, of the Alton Municipal Court, the other at the February term, 1838, of the Madison Circuit Court. Upon the judgment first rendered an execution was issued, and levied upon the property in controversy, in virtue of which the property was sold, and Merry became the purchaser. An execution was also issued upon the second judgment, which was levied upon the same property, and Merry also became the purchaser at the second sale. Seeber became a judgment creditor of Bostwick, and within fifteen months of the date of the first sale redeemed the

property. The bill filed states nothing of the first judgment, and seeks to hold the property under the sale upon the junior judgment, as against Seeber, who had redeemed from the senior judgment as a judgment creditor.

In 1845, the plaintiff in error filed his bill against the defendants in error, setting forth in substance, that he, plaintiff, obtained a judgment of $2,105.66$\frac{2}{3}$, and costs, against John Bostwick, one of said defendants, in the Madison Circuit Court, at the February term, 1838 ; that an execution was issued on said judgment, and levy made on the south-west quarter of section thirty-two, and east the half of the north-west quarter of section thirty-two, all in township six, range nine west, on the 16th December, 1838, and a sale made of said property to plaintiff, on the 27th January, 1840, at $200; that said property was not redeemed, and that the sheriff made and delivered a deed thereof to plaintiff; that the plaintiff also took another execution in said judgment, dated 28th February, 1838, and by virtue thereof levied upon a piece of land described as follows : " The splendid house, out-houses, and about six acres of land upon which they are situated in Upper Alton, the late residence of John Bostwick, which premises are more particularly described, as follows, to wit: beginning at the east side of Seminary street, in Upper Alton, Madison county, Illinois, at the line between section six and seven, in town five north, range nine west, and running on said section line east forty rods ; thence south, five degrees east, twenty-four rods; thence west, forty rods to Seminary street; thence north, five degrees west, on the east side of Seminary street, twenty-four rods, to the place of beginning, containing six acres of land, more or less ;" which last-named execution, which was levied on the last above-named land, was returned to the clerk's office before a sale of said land was made; that a *venditioni exponas* was duly issued on the 6th day of November, 1838, commanding the sheriff of Madison to sell the property thus levied upon, who sold the same to the plaintiff, after having duly given notice of the sale as required by law, at the sum of $300 ; that the sheriff made a deed therefor to the plaintiff, after the time of redemption had expired, the same not having been redeemed. That all the property mentioned herein

was levied upon as the property of the defendant Bostwick. That Bostwick was the owner of said property, with some personal property, and being in apparent good credit from having the possession of the property aforesaid, the plaintiff was induced, in June, 1836, to contract the debt with Bostwick, on which his judgment was obtained. That in October, 1836, Bostwick, who was then insolvent, and for the purpose of defrauding plaintiff, his creditor, made a deed of the lands herein described to the defendant, George Seeber, his son-in-law, for the nominal consideration of $12,000; and that Seeber, with full knowledge of Bostwick's insolvency, and with a knowledge that Bostwick intended to defraud the plaintiff, and without paying any consideration therefor, took a deed of said premises, from him, Bostwick. That since said deed was made to Seeber, Bostwick has always remained in possession of said property, and has made extensive improvements thereon with his own money. That from the date of said deed, until now, Bostwick has enjoyed the use and possession of all the property in the bill mentioned. That Bostwick has always professed to be the owner of said property, and has observed the same care in its preservation as the real owner would do, and has not accounted at any time to Seeber for its use. Has also paid all taxes thereon. That Bostwick was insolvent when the plaintiff's debt was contracted, and when his judgment was rendered; and that Bostwick had no other property except that in the bill mentioned, out of which to make the said judgment. Charges combination and fraud, and prays that a decree may be made, requiring defendants to deliver possession of the property, and to make a deed of the property mentioned herein to plaintiff, and to his heirs and assigns; and on failure to do so, that a commissioner be appointed to make such deeds; and also praying that the said deed to Seeber be declared by a decree to be null and void, as to said plaintiff, and for such other relief as to equity and good conscience shall appertain. Also, that the answers may be without oath. To which bill Bostwick answers; admitting the judgment of plaintiff, and a levy and sale of the property mentioned in the bill; and that there was no redemption, and that the sheriff made deeds, &c.; but denies that plaintiff derived any title from said

Merry *v.* Bostwick et al.

sales, denying that he had title to said property when the sales were made; and that the sale of the six acres of the land was void for want of a proper description, and makes the executions on which the land was sold a part of his answer; admits that all said land was levied upon and sold as Bostwick's property, and that he owned it in the spring of 1836. Denies that plaintiff was induced to give him credit, on account of having the property in his possession, which plaintiff afterwards sold, and says that the inducement to give the credit was from receiving $1,000 in cash, and good indorser on the note, which indorser remained good for eighteen months after the note fell due; avers that he was solvent when said deed to Seeber was made; that he owed from $75,000 to $80,000, while his property was worth $160,000; says he made the deed to Seeber for a valuable consideration and in good faith, and to discharge a subsisting debt then due Seeber to over $12,000. That after paying $12,000 of said debt, by making said deed, he still owed Seeber $600 or $700, for which he gave his note, in October, 1836. Admits that he made improvements on the land to the value of over $4,000 after the sale to Seeber, with his own money, which was the consideration of a five years' lease made to him by Seeber for the property. That since said lease has expired he has occupied part of the premises for taking care of them, and let some part, the rent whereof has been expended in keeping the property in repair. That he has taken care of said property since the termination of said lease at the request of Seeber; and that there has been no settlement between them since, because he could not rent the property. That Seeber paid the taxes during the time of the lease; that since he has paid them, except one year, which payment of taxes and taking care of the property was the consideration for using the property. Admits that since 1836, he has been agent of Seeber, and denies that he professed to be the owner, as alleged. Alleges that he sold property, between June and October, 1836, to the amount of $18,575, and that he was worth a large sum. That the property he conveyed to Seeber, was worth $12,000; and that he was paid in full therefor in the office of J. M. Krum, in Alton, Illinois, which consideration was made up of notes taken up by Seeber, at

34 *

request of Bostwick, and under an agreement to pay them in Illinois property. That all the improvements he put on the six-acre lot was $14,000 in value, including the $4,000; that in the latter part of the year 1836, he sold property to sundry persons to the sum of $93,700, &c.

George Seeber answers: Admits the judgment of plaintiff, and taking out execution and sale of the property, and that it was not redeemed; that sheriff's deeds were made therefor to plaintiff; but denies that Bostwick was then the owner of said lands, or that any title passed to plaintiff by the sale thereof, as he, Seeber, had been owner thereof from October 19th, 1836. Says, that the sale of the six acres of land in Upper Alton was void; because, first, of uncertainty in the description; and, secondly, that Bostwick was not the owner thereof when plaintiff's judgment was obtained. He further avers, that the plaintiff, in January, 1838, in the municipal court of the city of Alton, obtained a judgment against John Bostwick for $1,006.66, besides costs, and took an execution, on which plaintiff purchased six acres of land in Upper Alton, at $500, on the 20th day of August, 1838; and from which sale the said Seeber redeemed the said six acres of land, on the 28th day of August, 1839, by virtue of a judgment for $774.68, rendered in favor of said Seeber against Bostwick, by confession, in the month of July, 1839, at the July term of the Morgan Circuit Court, and took a deed therefor from the sheriff, whereby he became owner of said six acres of land; that, when he redeemed said land, he was satisfied that Bostwick had no interest therein, and that plaintiff took nothing by his purchase; but that he redeemed to prevent a lawsuit, which he thought might grow out of the plaintiff's purchase; that he redeemed against the advice of his counsel, and with a view to purchase his peace. Avers, that he has not resided in Illinois since the purchase of the land from Bostwick, but has resided 150 miles distant; that the six acres of land which he redeemed from the plaintiff's first sale, and the six acres of land claimed by the plaintiff on his second sale, are one and identical, and that plaintiff received the redemption-money. Admits, that the property was taken and sold by plaintiff, as Bostwick's property, and that he owned it in the early part of

the spring of 1836; but that he did not own it when the judgment was rendered for plaintiff, and when the property was sold. Avers, that when Bostwick made the deed to him of said property, Bostwick was solvent, and had enough to pay all his debts; and that he, Seeber, took his deed in good faith, and to secure a debt of from $12,000 to $13,000, due from Bostwick to him; that, when the six acres were purchased, the materials for building thereon were estimated at from $9,000 to $10,000, which, with the value of the other property, made the consideration $12,000; that, after the sale, Bostwick proposed to take a five years' lease on the six acres, at $800 a year, and, as the rent for the term, expend $4,000, which should complete the buildings, as originally designed; that Bostwick has accordingly had the possession of said property ever since, as tenant or agent; and that he, Bostwick, never professed to claim it in any other right since the sale, &c. Says he paid the taxes during the lease, and that the rents have paid them since, except for one year; that Bostwick and himself had a general settlement at the end of the lease, and since that time he has examined Bostwick's accounts, which have always proved satisfactory to him, Seeber. He avers that, when plaintiff sold the property herein mentioned, Bostwick had other property liable to execution, which was clear of incumbrance, and with which plaintiff could have made his debt. Knew plaintiff was a creditor when Bostwick made him his deed, and believed Bostwick then able to pay all his debts; that Bostwick owed him $12,700, for notes and bills, which he had taken up for Bostwick; that, after taking the property for $12,000, the said Bostwick gave Seeber a note for $700, on which the judgment was founded in Morgan Circuit Court, and under which he redeemed said six acres of land; that, in January, 1836, Seeber met Bostwick in Louisiana, who was there to settle his old debts; that Bostwick, had nothing but property in Illinois with which to pay the Louisiana creditors, who would not take it; whereupon, it was agreed between the defendants, that Seeber should buy up Bostwick's paper, and that he, Seeber, was to receive land in Illinois for all the paper he bought up, and for all the claims he also held against Bostwick, whereby he became the holder of paper to the sum of $12,700;

that, in October, 1836, Seeber came to Alton, Illinois, to get the property, and, finding the property herein mentioned unincumbered, and the most valuable, Seeber took that, with an understanding with Bostwick that, at the expiration of the lease, Bostwick would sell other property, and pay Seeber his $12,700 and interest back again, and that Seeber would reconvey to Bostwick, the property embraced in the deed of October, 1836; that he could not sell the said property, after its purchase, for over $6,000, from the depreciation of property in the market; that the consideration which he gave for the notes and claims which he held against Bostwick was his own, and not the property of Bostwick. To the above answers exceptions were taken, and the exceptions sustained in part, and the report of commissioners sustained, and leave given defendants to amend their answer, and also leave given to amend original bill. John Bostwick's amended answer to original bill goes on to specify the various species of indebtedness against himself, which fell into the hands of Seeber, and made up the consideration of the deed of October 9th, 1836, and also which formed the consideration of the $700 note, on which Seeber took the judgment in Morgan county.

George Seeber's amended answer to the original bill sets forth: that he received from Bostwick the $4,000 in improvements, as rent for the five years' lease; that, since 1841, he has allowed Bostwick to occupy a part of the house for taking care of it and renting the balance; that he has received $250; and that Bostwick has been his agent to oversee the premises. The residue of the answer retracts what Bostwick says as to the indebtedness, which was the consideration of the deed of October, 1836; averring, that he paid the full face of the paper taken up for Bostwick, and that all was due to him, when said deed and note were made, and which note was the one on which judgment was rendered, and on which his redemption of the six acres made.

The amended bill of complainant avers, in substance, that the judgment rendered in favor of Seeber was entered on a warrant of attorney, without any consideration, and that it was got up between Bostwick and Seeber, to defraud and defeat

the plaintiff of the benefit of his sale, from which Seeber re-deemed by virtue of said judgment, and requiring a specific answer, as to the consideration on which said judgment was founded.

Bostwick's answer to the amended bill submits to the court, whether, after plaintiff has taken the redemption-money, he can impeach the judgment on the ground of fraud; but avers, that the note on which the judgment was entered was given to See-ber in October 19, 1836, as the balance then due to him, Seeber; that, in 1839, Cowles and Krum, attorneys of Seeber, applied to him for the money, which he could not pay, and gave them the warrant of attorney to confess judgment.   That he did not know what Seeber intended to do with the judgment, when he gave the warrant of attorney to confess it; nor did Seeber know any thing of the matter at the time; nor does he know that the judgment was entered up for the express purpose of redeeming the six acres of land.

Seeber's answer to the amended bill protests also, that the plaintiff, after taking the redemption money, cannot impeach the judgment for fraud, but says, in substance: — That in 1839 he inclosed the note to his attorneys, Cowles & Krum, for collection, and supposed that Bostwick would pay it, with directions to se-cure the same by suit, or otherwise.   That a judgment was taken, and an execution and redemption as aforesaid.   That the note on which the judgment was founded, was for the balance found due him in October, 1836, and that the note was then given, &c.   Replications filed, &c.

Testimony of John M. Krum is in substance as follows: That he drew the deed from Bostwick to Seeber; the consider-ation was $12,000.   They had a settlement at that time, and affiant computed interest on notes, purporting to have been made by Bostwick, and accounts presented to him by them; that there was a balance over the $12,000, for which Bostwick gave his note at that time, and on which afterwards a judgment was entered, on a warrant of attorney, in the Morgan Circuit Court; was Bostwick's agent in 1835 and 1836, and made sales of real estate for him; he was engaged in dealing in real estate, and in merchandising; built several stores and

dwellings ; could raise money with great facility from bank and elsewhere, on account of his punctuality and business capacity ; had $150,000 of real estate during the first fifteen or eighteen months after coming to Alton ; from 1835 to 1837, it was supposed he had accumulated a large property ; it rose rapidly from 1835 to 1837, from 100 to 500 per cent. ; real estate began to depreciate in the spring and summer of 1837; witness knew of property to be sold in 1838 for half its cost in 1836 ; Botswick sold $30,000 worth of property in 1836, greater part for cash ; also, sold $40,000 to John James, in January or February, 1837, and other large sales ; that some money was paid and bills given for the balance ; which were dishonored in June or July, 1837, when John Bostwick also failed to meet his paper, and let it go to protest ; that up to this time he was reputed able to pay his debts.

William Silliman testifies, in substance, that he knew Bostwick in Louisiana; that he left there in 1835 ; that he found him in Illinois, in 1836 ; that, from common report and from his own knowledge of Bostwick, he has no hesitation in saying, that when he left Louisiana, he was unable to pay his debts, and that he left debts behind him, and that they must have been very heavy ; that Bostwick told him that he owed about $20,000 ; he also knew Seeber when he lived in Louisiana, who lived there many years ; lived with Bostwick, and married Bostwick's daughter ; that from the connection between Seeber and Bostwick, he has no doubt but Seeber knew all about Bostwick's pecuniary affairs; by reputation, Bostwick was insolvent, and he has no doubt he was truly so, when he left Louisiana.

The testimony of Lea Hardesty, is in substance, that he knew Bostwick in Louisiana, as early as 1824; that he left there between 1834 and 1836; was clerk of the District Court; that Bostwick was always embarrassed, and that for more than a year before leaving he was considered insolvent; knew Seeber there, and that he was married to a daughter of Bostwick; that from his connection with Bostwick, and living with him, he must have been acquainted with his pecuniary circumstances ; that Bostwick was considered insolvent for the ten years which he resided in Louisiana.

Valentine H. Dunn, says in substance, that he knew Bost-wick and Seeber in Louisiana, some eight or ten years before they left the State; he thinks they left in 1835, one going to Illinois, and the other to Missouri; that Bostwick brought to Illinois $2,200 or $2,300, as he told witness, which money be-longed to Sophia, his daughter; that Seeber was worth several thousand dollars, and had loaned Bostwick money, as they said; that at the time Bostwick left Louisiana, he was insolvent.

Charles M. Smith, swears in substance, that he knew Bostwick in Louisiana; he, witness, was his legal adviser, and knew his business; that he had some property in the name of his wife and Sophia Bostwick; this was sold for from $2,000 to $3,000, and the money taken by Bostwick to Illinois; from his best recollection, Bostwick had the reputation of an insolvent at the time he left Louisiana.

The depositions of Robert Harrison, Benjamin Green, An-drew McGilton, William G. Pinckard, John James, Ebenezer Marsh, Elias Hibbard, Nathaniel Buckmaster, William McBride, Samuel Wade, James Semple, Seth T. Sawyer, Abraham Breath, and Beal Howard, were taken to establish the following facts on the part of the plaintiff, to wit: That Bostwick, from the date of the deed to Seeber, in October, 1836, to the time of filing this bill, was in possession of said property, conveyed and claimed it as his own; and also that he exercised acts of owner-ship over the property during that time; that the property con-veyed was of far greater value than the consideration expressed in the deed; that John Bostwick was insolvent during the years 1836 and 1837, and that he was not able to pay his debts in June, 1836, nor in October, 1836, nor at any time afterwards; and also, that Bostwick had no property unincumbered, out of which the plaintiff could have made his judgment, without selling the property conveyed to Seeber. On the part of the defendants, they seek to establish by said witnesses, that Bostwick was solvent during the times spoken of, and could pay his debts, and that Bostwick did not exercise any other control over said property after the sale to Seeber, than as his agent. The plaintiff is of the opinion, that from the testimony last aforesaid, he has most conclusively proved the facts which he has aimed to establish.

This will be more fully seen by a view of the depositions, which, by agreement, will be before the court.

The next, and last piece of testimony, is a copy of the judgment from Morgan county, before WILLIAM THOMAS, Judge. This is a judgment for $774.58, entered on a warrant of attorney, and declaration filed on a note for $645.49, dated July 1, 1839. This judgment was rendered July 3d, 1839; and an execution taken out thereon, on the 24th day of July, 1839, directed to the sheriff of Madison county, and never returned.

On the hearing of this cause, the Circuit Court decreed, that the deed to Seeber, of October 19, 1836, conveying to him the south-west quarter, and the east half of the north-west quarter of section thirty-two, in township six north of range nine west, is declared fraudulent and void as against the title of plaintiff to the above described pieces of land, and that Seeber be required to convey them to plaintiff; and in failure, as the decree directs, that the commissioner make said deed; and that said deed, as to all the other pieces of land therein described, is, in all things confirmed and established, and that the defendants pay all costs, &c.

WILLIAM MARTIN and S. T. LOGAN, for plaintiff in error.

Two sales of the same property on two different judgments between the same parties, may be made. 2 Watts, 30.

A judgment by confession, not founded on valid consideration, is void, if entered to delay creditors. 1 Atk. 162; 9 Johns. 243; 3 Desaussure, 270; 12 Wend. 41; Gales, Stat. 315; 5 Cowen, 548, 575, 586.

A sale upon a judgment recovered on a fictitious debt, may be set aside. A judgment entered without consideration is void against a judgment creditor, or a *bonâ fide* purchaser, under a subsequent judgment. 7 Monr. 485; 1 Paige, C. R. 502, 508.

Conveyance made to hinder and delay creditors, is void. 2 Johns. C. R. 44; 4 Johns. R. 583; 14 Johns. 499.

BILLINGS & PARSONS, for defendants in error.

As to when voluntary conveyances are fraudulent as to subsequent conveyances. 8 Cowen, 436.

A judgment created for the purpose of redeeming, is valid. 2 Cowen, 519.

*Bonâ fide* purchaser protected, notwithstanding fraud of grantor. 18 Wend. 365; 6 Cond. 229; 6 Paige, 526.

A party cannot sell the same land twice before redemption, on two different executions against the same person. Merry's second sale was therefore void. 4 Cowen, 136; 8 Johns. 332; 5 Hill, 228; 11 Ills. R. 521.

If Seeber's judgment was void, he had no right to redeem; but Merry, having received the money on the redemption, is estopped from denying the validity of the redemption. 15 Wend. 251; 8 Watts, 280; 7 Hill, 93; 7 Cowen, 552; 10 Barr, 528; 3 Hill, 220; 4 Denio, 148; 11 N. Hamp. 309; 4 Barr, 194; 6 Barr, 249; 10 S. & M. 146.

TRUMBULL, J. By consent, both parties have assigned errors upon this record. The complainant objects to that part of the decree which allows Seeber any portion of the real estate in controversy, and Seeber complains because he cannot have it all. That the deed from Bostwick to Seeber was fraudulent as to creditors we cannot entertain a doubt. It bears date in October, 1836, and purports to have been executed in consideration of twelve thousand dollars paid by the latter to the former.

The evidence clearly shows that Bostwick resided in Louisiana in 1835, and was then insolvent; that he removed from thence to Illinois the same year; that soon after coming to this State he engaged largely in land speculations, and, at the date of the deed to Seeber, had contracted debts, on account of the purchase of real estate, to the amount of eighty thousand dollars; that Bostwick expended in improvements on the six acres in Upper Alton more than twenty thousand dollars, to say nothing of the other real estate embraced in the conveyance, and that ten thousand dollars of this amount was expended after the date of the deed; and although Bostwick, according to the speculative value put upon his real estate at that time, was not insolvent, yet it appears that while in such flourishing circumstances, and when property was rapidly appreciating in value, he conveyed to Seeber two hundred and seventy-three acres of

land in Madison county, besides the six acres on which he had then expended from ten to fifteen thousand dollars in the erection of a splendid dwelling, which he subsequently finished at a further expense of some ten thousand dollars, all, as Bostwick and Seeber insist, in consideration of the discharge of a debt due the latter of only twelve thousand dollars, and the use of the six acres and dwelling for five years, the parties themselves estimating the rent at $800 per annum. These circumstances, in connection with the character of the improvements made by Bostwick; the fact that he remained in possession and made improvements as well after the sale as before, all the while acting as, and being reputed to be, the owner; the fact that Seeber was his son-in-law; that Bostwick left Louisiana largely in debt, and if not insolvent when the conveyance was made, became largely so shortly afterwards, leave but little doubt that the conveyance was intended to place the property in a situation where it could not be reached by creditors, in case the speculations of Bostwick should turn out disastrously.

The year 1836 is distinguished as a period of reckless speculation and extravagance throughout the United States; and without commenting minutely on the mass of evidence in this record, all of which has been carefully examined, the whole case shows that the conveyance to Seeber was made, as well to place the property it embraced beyond the reach of creditors in case of a revulsion in the affairs of Bostwick, as to discharge a debt due to Seeber.

We think the evidence does show that Bostwick was indebted to Seeber in some amount; but this circumstance does not relieve the transaction from the taint of fraud in law. The statute makes void all conveyances made with the intent to delay, hinder, or defraud creditors of their just and lawful claims. The complainant has shown himself such a creditor at the time the deed to Seeber was executed, and as to him it must be set aside.

If this was the only branch of the case, there could be no doubt of the complainant's right to have satisfaction of his debt out of the property conveyed to Seeber. But there is another feature in the case which prevents his holding the six acres on

which the dwelling-house is situated, either on the purchase heretofore made or subjecting it to an execution hereafter to be issued. The complainant obtained two different judgments against Bostwick, at different times, before different courts, and for different amounts. The elder of these judgments was rendered at the January term, 1838, of the Municipal Court for the city of Alton, and was for the sum of $1,006.66. The six-acre tract was sold on an execution issued on this judgment and purchased in by the complainant, August 20, 1838, for $500, from which sale Seeber, as a judgment creditor, redeemed on the 28th August, 1839, by virtue of a judgment in his favor against Bostwick, obtained in July, 1839, in the Circuit Court of Morgan county. The redemption-money was paid to the sheriff, and by him to the complainant, who received the same without objection. None of these facts are noticed by the complainant in his original bill, but Seeber sets them up in his answer, alleging that he made the redemption, not because the deed from Bostwick was insufficient to convey him the title, but to avoid any litigation which might possibly grow out of it.

The complainant admits the judgment sale and redemption as alleged by Seeber in his answer, and seeks to avoid their effect in his amended bill, by alleging that the judgment under which Seeber redeemed was founded on a warrant of attorney executed by Bostwick to Seeber without any consideration, " to enable him to procure a judgment thereon which should be used by Seeber to defraud the complainant, and prevent him from enjoying the fruit of his purchase." It is difficult to conceive how the complainant was to be defrauded of the benefit of his purchase by the redemption. In the very act of redeeming, Seeber refunded to the complainant the whole amount he had given for the land, with ten per cent. interest. This money the complainant received without objection, and still retains, without even an offer to return it. Under such circumstances, it comes with an ill grace from him to allege that he has been prevented from enjoying the fruit of his purchase. The legal presumption is that he bid for the property what he considered it worth, and he knew at the time that the defendant in execution would have the right to redeem from his purchase at any time within twelve

months, and if he failed to do so, that judgment creditors would have the same right for three months longer. If the redemption was invalid, as complainant, in his amended bill alleges, even then he could not succeed in this suit, for the reason that he does not pretend to claim the property on the first purchase, but under a purchase which he subsequently made at a sheriff's sale on an execution issued upon a junior judgment.

The allegations and proofs must correspond, and the case made by the complainant, under his purchase on a junior judgment, is destroyed by the sale under the first judgment, whether redeemed from or not. Admit that the complainant could do so unjust a thing as to retain Seeber's money, which is acknowledged to have been paid to redeem the property, and still have the redemption set aside, the consequence would be that he would then be entitled to the property on his first purchase, which would present quite a different case from the one stated in either the original or amended bill. But the idea is preposterous, that in a court of equity the complainant can have both the land and the money paid for its redemption.

The complainant can claim nothing on his second purchase, made under the junior judgment, for the reason that Bostwick had no such interest in the premises, at the time that sale was made, as could be taken and sold on execution. The premises had been previously sold on an older judgment; and, before the defendant's right to redeem had expired, within less than twelve months, the complainant caused them to be sold a second time, on a junior judgment.

The only interest which Bostwick then had was the right to redeem; and to allow this right to be sold on execution would defeat the whole policy of the law allowing redemptions. The right was designed as a favor to the debtor, to afford him an opportunity to save his real estate by the payment, at any time within twelve months, of the price for which it sold, with ten per cent. interest; but it would be entirely cut off by allowing this right to redeem to be sold on a second judgment. Again, such a practice would interfere directly with the mode prescribed by the legislature for redemptions by judgment creditors. The law will not permit them to redeem till the expira-

tion of twelve months from the first sale, and it would be inconsistent with this provision of the statute to allow a judgment creditor to accomplish the same object by a sale made within the twelve months.

It was suggested, upon the argument, that, admitting the second sale to have been invalid, and that the purchaser took nothing under it, still the complainant would have the right to have Seeber's title, acquired by the redemption, set aside, and the property declared subject to the judgment which the complainant now holds against Bostwick. This cannot be, for the redemption by Seeber must be either valid or invalid. If valid, then he is entitled to the property; if invalid, then complainant is entitled to it under his first purchase, which he does not even pretend, nor could he with any show of justice, after receiving and retaining the redemption-money paid by Seeber.

In no event has Bostwick any interest in the premises which could now be made subject to complainant's second judgment.

The decree of the Circuit Court is affirmed, with costs.

*Decree affirmed.*