SAMUEL C. HILL *et al.*

*v.*

GEORGE H. BLACKWELDER.

*Filed at Springfield March 30, 1885.*

1. SPECIAL CONSTABLE—*to serve summons in civil suit.* A justice of the peace can not make a lawful appointment of a constable *pro tem.* to serve a summons or other personal notice in a civil suit, and the service of summons by such a constable will fail to give the justice of the peace jurisdiction of the person of the defendant.

2. ESTOPPEL—*the general rule.* Where one, by his words or conduct, intentionally causes another to believe the existence of a certain state of

113 283
129 54
29a 248

113 283
34a 198

113 283
39a 211

113 283
144 38
145 565

113 283
153 515
45a 262
45a 491

113 283
42a 354

113 283
64a 86

113 283
173 77.

113 283
76a 605

113 283
176 469

113 283
179 560

113 283
180 620

113 283
a92a ²659

113 283
d95a ⁹312

things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time, and the Statute of Frauds will have no application to defeat the application of this rule.

3.  SAME—*to deny the validity of a judgment under which a sale was made.* Where the defendant in a judgment rendered by a justice of the peace, which is made a lien upon real estate by filing a transcript thereof in the office of the clerk of the circuit court, induces a creditor other than the plaintiff in the judgment to make a redemption under such judgment from prior sales under execution, and to bid off a tract of land previously sold to hold as a security and for the benefit of the former, such party, and those claiming under him with notice of the title thus acquired, will, in a court of equity, be estopped from defeating such title by showing that the judgment of the justice of the peace was void for want of jurisdiction over the person of such defendant.

4.  SAME—*whether a fraudulent intent is necessary to the application of the rule.* It is not necessary to the application of an equitable estoppel that there should be a fraudulent intention on the part of the party causing another to act upon the belief of the existence of a certain state of fact, and thereby alter his position. It is enough if there would be a fraudulent effect from allowing the party to set up a claim inconsistent and at variance with his former acts and declarations, and that a fraud would thereby be perpetrated on the rights of the person thus induced to alter his position.

5.  SAME—*diligence required of party sought to be influenced by false representations—as, in the examination of the records as to the facts and title.* Where the foundation of the estoppel is in silence and omission to give notice of one's rights, the party relying upon the same must not have had the means of ascertaining the true state of the title by reference to the public records. But this rule does not apply to a case where the land owner has actively encouraged and induced the injured party to act.

6.  SAME—*want of knowledge on the part of one who induces a certain line of action in another, as to the existence of facts.* Where a party, by his representations, or otherwise, actually encourages and induces another to make a redemption from a judicial sale of his land under a transcript of a judgment of a justice of the peace against him, and become the purchaser of the land, he, and those claiming under him with notice of the rights of such purchaser or his grantee, will be estopped from defeating the title thus acquired by showing that the service of the summons on him was void, as being by one not authorized to serve the same, although that fact may not have been known to him at the time he so induced the other party to make the redemption.

7.  DESCRIPTION—*"west side" of a tract of land—whether sufficiently certain.* Where a debtor owns ten acres on the west side of a forty-acre tract, being a quarter of a quarter-section, a levy upon the same, described

as the "west side of the N. E. ¼ of the N. W. ¼ of sec. 23," etc., is not void for uncertainty, it meaning the west half of the tract, which includes the ten acres off the west side thereof.

8. EXECUTION—*equity of redemption—whether subject to levy and sale.* Where a judgment debtor's interest in a tract of land is sold under a valid levy under a valid judgment and execution, his right to redeem from such sale is not subject to levy and sale under another execution.

9. INURING *of subsequently acquired title.* By statutory provision, a conveyance of land by one not having title is made valid to pass an after acquired title, the same as if the grantor had the legal estate at the time of the conveyance; but this rule does not extend to a sheriff's deed made upon an execution sale.

10. So where land of a debtor is sold on execution, and is again sold under a second execution within twelve months, a redemption by a judgment creditor from the first sale will not operate to pass title to the purchaser at the second sale, but the title will pass to the purchaser at the sale under the redemption.

APPEAL from the Circuit Court of Montgomery county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. MILLER & McDAVID, and Mr. J. M. TRUITT, for the appellants:

As a general rule a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did influence it, when such denial will operate to the injury of the latter. *Kinnear* v. *Mackey,* 85 Ill. 96; *Heiner* v. *Vandolah,* 57 id. 520.

It is not essential there should be intentional fraud. It is sufficient if it will result from the evidence he attempts to set up. *Kinnear* v. *Mackey,* 85 Ill. 96; *Flower* v. *Elwood,* 66 id. 447; *Chandler* v. *White,* 84 id. 435.

It has been held by this court that one who recommended a title to a purchaser could not be afterward heard to question it. *Winchell* v. *Edwards,* 57 Ill. 41; *Jeneson* v. *Jeneson,* 66 id. 259; *Bradley* v. *Luce,* 99 id. 234; *Curyea* v. *Berry,* 84 id. 600.

The description of the land in the levy on the first execution as "west side," etc., is sufficient. *Colcord* v. *Alexander,* 67 Ill. 581; *Billings* v. *Kankakee Coal Co.* id. 489.

The second levy and sale were void for the reason that the debtor had no title remaining to be sold.

Messrs. LANE & COOPER, for the appellee:

The judgment in favor of Buford & Field was void, and so were all proceedings under it. *Evans* v. *Pierce*, 2 Scam. 469; *Johnson* v. *Baker*, 38 Ill. 99; *Borders* v. *Murphy*, 78 id. 81.

On the redemption the title to the ten acres became subject to the sale made by the Loan and Trust company, and the title to the forty acres became absolutely vested in Harris.

The description of the levy on the first sale of the ten-acre tract was void for uncertainty. *Schaumtoeffel* v. *Belm*, 77 Ill. 567; *Haskins* v. *Haskins*, 67 id. 446; *Hughes* v. *Streeter*, 24 id. 650.

Hermann on Estoppel, 415, says: "By the application of this principle with respect to the title to real property it must appear, first, that the party making the admission, by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission with the intent to deceive, or with such culpable and careless negligence as to amount to constructive fraud; and third, that the other party was not only destitute of all knowledge of the true state of the title, but of all means of acquiring such knowledge." See, to the same effect, Bigelow on Estoppel, 437. Nearly the same language is used in *People* v. *Brown*, 67 Ill. 439, and *Dinet* v. *Eilert*, 13 Bradw. 99, and cases cited.

On the doctrine of estoppel, see Hermann on Estoppel, 421, 439; Bigelow on Estoppel, 438.

To show that under the Statute of Frauds verbal statements of the parties could not operate as an estoppel, reference is made to Hermann on Estoppel, 439; Bigelow on Estoppel, 448; *Brightman* v. *Hicks*, 108 Mass. 246; *Aherend* v. *Obiome*, 118 id. 268; *Parker* v. *Barker*, 2 Metc. 431; *Henshaw* v. *Bissell*, 18 Wall. 271; *Butcher* v. *Buchanan*, 17 Iowa, 81.

There can be no estoppel if the party had notice of the title, as he had from the records. Bigelow on Estoppel, 467; Hermann on Estoppel, 428; *Morris* v. *Hugh,* 38 Ill. 155; *Hill* v. *Epley,* 31 Pa. 331; *Krouff* v. *Thompson,* 4 Harr. 361; *Wood* v. *Griffin,* 46 N. H. 237; *Mills* v. *Graves,* 38 Ill. 465.

The doctrine of equitable estoppel is based on a fraudulent purpose and a fraudulent result. *Dorlarque* v. *Cress,* 71 Ill. 380; *Chandler* v. *White,* 84 id. 438.

The Buford & Field judgment being void, no rights could be acquired under it. *Borders* v. *Murphy,* 78 Ill. 81; *Mulvey* v. *Carpenter,* id. 581; *Johnson* v. *Baker,* 38 id. 99.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from a decree of the Montgomery circuit court dismissing a bill in chancery, brought by Dresser and Hill, against Blackwelder, to enjoin the prosecution of an action of ejectment by the latter against the two former, to recover possession of a certain forty-acre and a certain ten-acre tract of land. Both parties claim title from a common source,—James A. Harris, deceased. The record shows that Harris was indebted to divers persons who had recovered judgments against him, among whom were Buford & Field, who recovered a judgment against Harris before a justice of the peace on September 8, 1874, a transcript of which judgment, to make it a lien on real estate, was filed in the clerk's office of the circuit court, as provided by the statute, September 9, 1874. There had been several successive sales and redemptions of the lands in question, under different judgments against Harris, the last of said judgments next prior to that of Buford & Field being one of Weil & Bro., which last judgment, together with all the prior judgments and redemptions, amounted to $829.49. To redeem from the sale under the execution of Weil & Bro. against Harris, Dresser paid said sum of $829.49, and afterwards, at the sheriff's sale under the

execution upon the Buford & Field judgment, on November 13, 1875, Dresser became the purchaser of the lands, paying the further sum of $59.49. Dresser received a sheriff's deed for the lands, and afterward sold and conveyed them to Hill. This constitutes Hill's claim of title to the lands. Harris died in September, 1877, and the administrator of his estate subsequently, by virtue of an order of the county court of the county, sold the forty-acre tract to Blackwelder for the sum of $25. Neither Dresser nor Hill was made a party to the proceeding in which such order was made. This is Blackwelder's claim of title to the forty-acre tract. His claim of title to the ten-acre tract is different, and will be afterward spoken of.

The alleged defect in Hill's title to the forty acres is, that the judgment in favor of Buford & Field, against Harris, before the justice of the peace, under execution upon which Dresser bought the lands at sheriff's sale, was void for want of jurisdiction of the person of Harris, the summons in the suit having been served upon Harris by a special constable, and there having been no appearance by Harris. It is expressly decided in *Gordon* v. *Knapp*, 1 Scam. 489, that a justice of the peace can not appoint a constable *pro tem* to serve a summons or other personal notice in a civil suit.

The bill sets up the claim of an estoppel *in pais* against the defendant to make the above objection to the Buford & Field judgment, as arising from Harris' inducing Dresser to make the redemption and purchase under the judgment which he did, and the object of the bill is to have such estoppel declared and enforced.

The case made by the proofs is, that Dresser was the president of a certain bank which held a judgment in its favor against Harris and one Hunter, rendered upon a note against the two latter, Hunter being a surety on the note; that Hunter came to Dresser and stated that Harris had lands in Montgomery county, and that if the prior liens were paid off

they could be sold for enough more than the liens to protect Hunter; that afterward both Harris and Hunter came to Dresser, and Harris requested Dresser to aid him by paying off the liens on the land, saying that Dresser could hold the lands, which would make him secure for the money he would advance, and then Harris thought he could sell the lands for enough more to protect Hunter and make the bank judgment out of the lands. Harris told Dresser to see Lane, Harris' attorney; that he would see that the title was good, and that whatever Lane said, would be all right. Dresser afterwards did see Lane, who told Dresser the title was good. Under the above arrangement, and at Harris' request, Dresser advanced the money ($829.49) to make the redemption, under the Buford & Field judgment, of the lands from the last preceding sale under the judgment of Weil & Bro., and bought the lands at sheriff's sale November 13, 1875, under execution upon the Buford & Field judgment, paying $59.41 more. Some two or three years after this, Harris came to Dresser and told him he would have to sell the lands and get his money out of them; that he (Harris) had been trying to find a purchaser, but could not find one. Dresser accordingly sold the lands to Hill, giving a warranty deed, and getting about what the land cost him, with the interest added.

The criticism is made upon this proof, that it does not show that this particular judgment of Buford & Field was in the view of the parties, that redemption was to be made under that judgment, or that the lands were to be bought by Dresser under that specific judgment. The evidence does fail in specific mention of this judgment; but it shows that Dresser made the purchase upon the execution under the previous arrangement with Harris, and at his request, and Harris' action subsequent to the sale was in recognition of the same fact. We think the whole evidence should be viewed as establishing that Harris requested Dresser to make the redemption and purchase under the judgment of Buford & Field against

Harris, and we are of opinion it presents a clear case of an equitable estoppel. Dresser did not, of his own motion and for his own benefit, make the redemption and bid off the lands under the execution, but he was sought out by Harris and Hunter, and was by them requested and induced to do what he did for their benefit, in having the excess above the execution sale for which it was believed by Harris he could afterwards make sale of the lands. Any such excess would have gone in payment of the judgment against Harris and Hunter, and it being in favor of the bank, it may be said the bank would have thereby derived a benefit. Nothing appears but what Hunter was entirely solvent, and the judgment collectible from him, and the evidence does not show that the benefit of the bank in getting satisfaction of its judgment was at all a moving consideration with Dresser, and what he did appears to have been but a friendly act of accommodation to Harris and Hunter. After thus inducing Dresser to advance a large sum of money, under the judgment of Buford & Field against Harris, for the redemption of the lands, and to purchase the lands under execution upon the judgment, for Harris afterwards to say that this judgment against himself was void for want of jurisdiction of his person, and for that cause take the lands away from Dresser, and cause him to lose the money he had expended, would be a gross breach of good faith, and manifestly inequitable and against conscience. Harris' whole conduct was an implied representation that this judgment against him was a valid judgment. Notwithstanding the summons in the suit was not served upon him by an authorized officer, he might be content for the judgment to stand, and could waive the objection that the summons was not served by an authorized officer, and his conduct should be taken as a waiver of that objection. Harris, by his conduct, caused Dresser to believe that the judgment of Buford & Field was such an one that under it redemption could be made from a prior sale, and that under

it a sale of land on execution could be made which would pass title,—that is, that it was a valid judgment,—and he induced Dresser to act on that belief, and to alter, to his prejudice, his own previous position, and Harris should be estopped from averring against Dresser, or Hill, the purchaser from him, that the judgment was not a valid one. "Where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." *Pickard* v. *Sears*, 6 A. & E. 469. And see *Hefner* v. *Vandolah*, 57 Ill. 523 ; *Kinnear* v. *Mackey*, 85 id. 96, and authorities cited.

It is objected, as against any estoppel, that the arrangement between Harris and Dresser, made prior to the sale, was within the Statute of Frauds, and that there can be no verbal estoppel by a contract invalid under that statute. We suppose the notion of the Statute of Frauds affecting the case comes from Harris saying that Dresser could hold the lands which he should buy under the execution, which would make him secure for the money he would advance, and regarding the bill as based upon such verbal promise. But the bill is not at all founded upon this,—to enforce any agreement that Dresser might hold the lands as security. The agreement to so hold the lands was not one in favor of Dresser, but for the benefit of Harris, qualifying Dresser's holding of the land, making it to be held as security,—not absolutely. The object of the bill is to estop Harris from saying that the judgment was void because of his conduct in causing Dresser to suppose the judgment was a valid one, and inducing him to act as he did under it upon that supposition. What was said as to holding the lands as security, was of force only as part of the conduct holding out the judgment to be valid. We do not consider the Statute of Frauds as having any application to the case.

It is said there can be no estoppel if the element of fraud is wanting, and that there was here no fraudulent intention on the part of Harris. No fraudulent intention is required. It is enough if there would be a fraudulent effect from the evidence attempted to be set up. To allow Harris to invalidate this redemption and execution sale, as he here seeks to do, would be to admit the perpetration of a gross fraud and injustice upon Dresser. To prevent this, arises the equitable estoppel.

It is said that a recourse to the records would have disclosed the fact that the service of the summons in the suit of Buford & Field against Harris was by a special constable; and it is insisted that to enable one to set up the title by estoppel, with respect to real estate, he must, at the time he took the title, have been without the means of ascertaining the true state of the title by reference to records. We understand that rule, and the cases cited by appellee's counsel in its support, as applying only in cases where the foundation of the estoppel is in silence, and omission to give notice of one's right, and not in a case where the land owner has actively encouraged and induced the injured party to act,— that they do not apply to such a case as is presented by this record. *Knouf* v. *Thompson*, 4 Harris, 361.

It is alleged further, that for the application of this principle with respect to title to real property, it must appear that the party making the admission, by his declarations or conduct, was apprised of the true state of his own title. It does not appear that Harris knew the summons in the case of the Buford & Field judgment was served upon him by an unauthorized officer, and so that the judgment was invalid. This necessity of knowledge of the state of the title we take to apply, as above stated, to the case of silence and acquiescence, and not to a case of active encouragement and procurement to make a purchase, as here. We hold that Harris' conduct was, in effect, a representation that the judgment was a valid

one against him, and whether he did or not know it to be invalid, we regard as immaterial. He ought to have known the facts before inducing Dresser to act, and should be taken as having known them. Dresser had the right, without further inquiry, to rely upon the representation of Harris, and act upon the assumption that Harris was acquainted with his own title, and that his representations were true. The consequences were the same to Dresser whether Harris knew or was ignorant of the invalidity of the judgment. The doctrine of equitable estoppel does not depend, as before observed, upon any fraudulent design, but it is applied to avert injurious consequences from having been misled by the conduct of another. See *Chapman* v. *Chapman,* 59 Pa. 214; *Miller* v. *Miller,* 60 id. 16; *Storrs* v. *Barker,* 6 Johns. Ch. 166; *Favill* v. *Roberts,* 50 N. Y. 222; *Tilton* v. *Nelson,* 27 Barb. 595; *Wells* v. *Pierce,* 27 N. H. 503; *Wilcox* v. *Iowa Wesleyan University,* 32 Iowa, 367; 1 Story's Eq. Jur. secs. 193, 387.

Hill was in the possession of the forty-acres at the time of Blackwelder's purchase thereof at the administrator's sale, and so the latter stands affected with notice of all Hill's equitable right acquired by his purchase from Dresser, and stands in no better position than would Harris himself. As respects the ten-acre tract, Dresser's claim of title thereto is the same as that to the forty acres; but defendant's claim of title is from another source than purchase at a sale by the administrator of Harris, as he claims the forty-acre tract.

On May 14, 1874, there were two judgments rendered in the circuit court of Montgomery county in favor of the Montgomery County Loan and Trust Company, against Harris, for $648.60, and $1081, respectively. On June 9, 1874, executions were issued on these judgments and levied on the forty-acre tract in question, and on "West side of N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 23," etc., the description of the ten-acre tract in controversy being "ten acres off of the west side of N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 23," etc. On these executions the lands levied on were

sold at sheriff's sale on September 8, 1874, to the plaintiff in executions, for $200 indorsed on one execution, and $200 indorsed on the other. It was admitted that Wm. J. Glenn, as judgment creditor of Harris, redeemed from this sale, and that James H. Marshall, James Blaky & Co., J. Weil & Bro., and Buford & Field, each as judgment creditors, made consecutive redemptions in the order named, except the defendant insists that Buford & Field had no lawful judgment against Harris, and so were not judgment creditors, and could not redeem. Two *alias* executions on these two judgments in favor of the Montgomery County Loan and Trust Company, against Harris, were issued December 22, 1874, and levied, with other lands, on ten acres of land, described as follows: "Ten acres off of the west side of the N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 23," etc., and on February 8, 1875, the lands so levied on were sold at sheriff's sale, upon the executions, to the plaintiff in executions, which assigned its certificate of purchase to one Lane, to whom a sheriff's deed of the last mentioned lands was executed, and Lane afterwards sold and conveyed the same lands to Blackwelder, the defendant, who in this way derives his claim of title to the ten-acre tract.

It is seen from the above, that there was a sale of these lands under the judgment of the Montgomery County Loan and Trust Company against Harris, on September 8, 1874, and that on February 8, 1875, five months after, there was a second sale of the lands under *alias* executions upon this same judgment of the Montgomery County Loan and Trust Company. The justification set up for this second sale is, that the first sale was void by reason of the uncertainty of description as respects the ten acres. The description under which the first levy and sale were made was, "West side of N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 23," etc., and that at the second sale being, "Ten acres off of the west side of the N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 23," etc. Under the holding in *Winslow* v. *Cooper*, 104 Ill. 235, that the "north side" of a lot of land means the

"north half" of the lot, (following *Chiniquy* v. *The People,* 78 Ill. 570, that the "east end" of a tract of land means the "east half" of the tract,) it must be taken that the "west side of N. E. ¼ of N. W. ¼" described the west half of the quarter quarter-section, and so would be a certain description, and as the greater includes the less, it included the ten acres that Harris owned on the west side of the tract.   The first sale, then, not being held void for the uncertainty of description of the property sold, it was a valid sale, and there afterward remained in the judgment debtor only a right of redemption of the property.   The sale of the same property five months afterwards, under execution against the same judgment debtor, was invalid.   At the time of the second sale the only interest which the judgment debtor had in the property was a right of redemption; but the right of redemption of a judgment debtor is not subject to be levied on and sold by virtue of another execution.   (*Merry* v. *Bostwick,* 13 Ill. 398; *Watson* v. *Reissig,* 24 id. 281.)   Such a sale, as said in the latter case, is void.   The defendant's claim of title, then, to the ten acres, being under said second sale, fails, and the title remains in complainant Hill, derived under the sheriff's sale made under the Buford & Field judgment against Harris, November 13, 1875.

As against this title, it is claimed that by Glenn's redemption on September 10, 1875, from the first sale on September 8, 1874, of this ten acres, under the judgment of the Montgomery County Loan and Trust Company, the land reverted to the judgment debtor, and became subject to the second sale of it made under that judgment on February 8, 1875, and that thus the title passed under this second sale, and became vested in the defendant.   By provision of our statute a conveyance of land by one not having title, is made as valid to pass an after acquired title as if the grantor had the legal estate at the time of the conveyance.   But this does not extend to a sheriff's deed made upon an execution sale.

The sheriff sells, and his deed conveys but such interest as the judgment debtor has at the time of the sale, and the deed does not operate to pass any subsequently acquired title to the land. The redemption from the first sale, and the restoration thereby of the land to the judgment debtor, had no effect to cause anything which thus came back to the debtor, to pass under the intermediate and second sale.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*