SAMUEL SHELLER, Impleaded, etc.,

v.

OSCAR MCKENNEY ET AL.

1. EVIDENCE.—An admission or promise by the alleged maker in relation to a note not produced or identified, even if unexplained and undisputed, will not warrant a finding either that said alleged maker had ratified the forgery of his name thereto, or estopped himself from denying his liability thereon.

2. PRACTICE—INSTRUCTION.—An instruction based upon no evidence and raising a theory of law not in the case, can only have a tendency to confuse and embarrass the jury and should not be given.

3. ESTOPPEL—EQUITABLE.—A party will not be allowed to invoke the rule of equitable estoppel where he has not been induced to change his previous position, but only to change his "previous condition of mind."

APPEAL from the Circuit Court of Carroll county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed November 25, 1885.

This was a suit in assumpsit, brought by Oscar McKenney and George C. Loveland against Noah Blough and Samuel Sheller, in the Circuit Court of Carroll county. The declaration counted upon two promissory notes, executed by the defendants to the plaintiffs, one for $300, dated March 17, 1877, and the other for $400, dated October 2, 1882. Defendant Sheller appeared and pleaded non-assumpsit, verified by affidavit, and defendant Blough was defaulted for want of a plea. Prior to the trial, the plaintiffs withdrew that portion of their declaration relating to the $400 note, and the issue as to the other note being tried before the court and a jury, the plaintiffs recovered a verdict and judgment for the amount appearing to be due thereon.

The defense made by Sheller was, that his signature to the note was a forgery. It appeared that the $300 note was given to the plaintiffs by Blough for money loaned to him by them, and that the $400 note, at or about the day of its date, was given by Blough to the plaintiffs in payment and satisfaction of

the amount then due on the $300 note. Sheller's signature to the $400 note, as the evidence shows beyond question, was a forgery, and the plaintiffs, on becoming aware of that fact, procured a return by Blough to them of the $300 note which they had previously surrendered to him.

The evidence as to the genuineness of Sheller's signature to the $300 note was conflicting. Blough, who at the time his deposition was taken was confined in the county jail on a charge of forgery, and who, at the time of the trial, had been convicted of that offense, and was suffering a term of imprisonment in the penitentiary, testified that the note was signed by Sheller; but his evidence was disputed by Sheller, who testified that the signature to said note was not his, and that he never signed the note or authorized any one to sign it for him, and that he never heard of the note or knew of its existence until a short time before Blough went to the penitentiary. In this he was corroborated by the evidence of his son, who testified that in his opinion the signature was not genuine.

Each of the plaintiffs gave evidence of an interview with Sheller in relation to the notes. McKenney testified that he had no conversation with him in relation to the $300 note, but that he had one in relation to the $400 note, in which Sheller stated that he had signed a $200 note in blank, upon which he understood Blough was to obtain money from another person or from the plaintiffs. Sheller, in giving his account of the same interview, testified that McKenney told him that he had a $300 note with his, Sheller's, signature on it, which Blough had given to the plaintiffs, and that he told McKenney that he had never signed a note to them for that amount; that he had signed a note for $200, with the name of the payee blank, and that he supposed, at the time he was signing it, that the money was to come from the plaintiffs. Substantially the same version of the conversation was given by Sheller's son.

Loveland testified that he wrote to Sheller in regard to the $300 note, and that two or three days afterward Sheller came into the plaintiff's store and said that he wanted Blough to pay the note, and thought he would do so if the plaintiffs would give him a little time, but that if the plaintiffs must have

their money, he would go to the bank and get it; that Sheller said he would see it paid, if Blough did not pay it. The witness testified, however, that at this interview no note was produced or shown to Sheller, and that he could not say that the amount of the note was mentioned either in the conversation or in the notice sent to Sheller, although he thought it was mentioned in both. The date of this conversation was fixed by the witness at about April 1, 1882, a little more than two years before the commencement of the suit. Sheller testified positively that no such interview took place, and he claims not to have known the amount of the note held by the plaintiffs, or even of the existence of the $300 note, until long afterward.

The court permitted the plaintiffs, against the objection of defendant Sheller, to read in evidence to the jury the $400 note; also the plea in this case and Sheller's affidavit verifying the same, and also Sheller's sworn plea in a suit by another plaintiff against him and Blough; to the admission of which evidence said Sheller duly excepted. The court, at the instance of the plaintiffs, gave to the jury the following instructions:

1.  "The court instructs the jury that the law is, that where a person's name is signed to a promissory note without his authority, he may afterward ratify its execution, and acknowledge its binding validity; and if he does this, his relation to the note will be precisely the same as if he had executed it personally.

2.  "The court instructs the jury, that if a party signs his name to blank paper and delivers it, with authority to fill the blank above his signature with a note or bill to a specified person or firm, and the person receiving it fills it to a different person, and it is passed in the course of business without notice of the facts, the maker is bound by the instrument.

3.  "Although the jury may believe, from the evidence, that the defendant Sheller did not sign the note in suit, but that defendant Blough signed said Sheller's name thereto without authority, still, if the jury further believe, from the evidence, that since his name was so signed without authority, the defendant Sheller, with full knowledge of all the facts,

went to the plaintiffs and promised them or either of them to pay said note, had knowledge that he was talking about the note now in suit, then he will be deemed to have adopted said note, and is bound to the same extent as though he had signed the note in the first place, and in such case your verdict should be for the plaintiffs.

4. " The Court instructs the jury that when a person, by his words or conduct, voluntarily, knowingly and intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief so as to change his previous condition of mind, the person inducing such belief will be estopped from afterward denying the existence of such state of things to the prejudice of the person so acting.

5. "The court instructs the jury that any statement or admissions knowingly, deliberately and purposely made by one person, intended to influence the conduct of another, if acted upon by the latter, will be binding upon the former, and it is a matter of no importance whether such representations are made in direct language to the plaintiffs themselves, or whether they may be implied from the conduct of the parties sought to be charged, provided such conduct is intended to influence the actions of the others, and did so influence them to the others' prejudice.

6. " The jury are instructed, that to constitute an estoppel it is not necessary that the party should design to mislead ; it is enough if the act of declaration was deliberately and intentionally made, with full knowledge of the facts, and did mislead, and was calculated to do so, to the injury of another, while acting in good faith, and with reasonable prudence and diligence."

By consent of the parties the appeal has been brought to this court.

Mr. JAMES SHAW, Mr. E. F. DUTCHER, and Mr. NELSON FLETCHER, for appellant.

Mr. GEORGE C. MASTIN, Mr. GEORGE W. MOYER and Mr. GEORGE L. HOFFMAN, for appellees.

BAILEY, P. J.   The evidence as to the genuineness of defendant Sheller's signature to the $300 note being conflicting, the first six instructions given to the jury, at the instance of the plaintiffs, except perhaps the second, related exclusively to the rules of law applicable to the case, should the jury find that issue in favor of Sheller.   The propriety of these instructions then, must be determined upon the theory that the jury so found, and that Sheller's signature to the note was, in fact, a forgery.   Of these instructions, the first two sought to apply the doctrine of subsequent ratification, and the last three that of equitable estoppel.

The only evidence in the case upon which a theory of either ratification or estoppel is sought to be based, is that of a conversation between Loveland, one of the plaintiffs, and Sheller, about the first of April, 1882.   That conversation is sworn to by Loveland and denied by Sheller; but assuming that Loveland's account of it is correct, it appears that on that occasion no note was produced, and it is left exceedingly doubtful whether the amount or description of the note about which the parties were conversing was so stated as to identify in the mind of either the subject-matter of the conversation.   At that time, as the evidence clearly shows, a genuine note signed by Blough and Sheller for $200 was outstanding, and as Sheller supposed or thought very probable, in the hands of the plaintiffs.   He came to Loveland's store in answer to a notification received from Loveland, to call on him in relation to some note against him held by the plaintiff, and a conversation thereupon took place in which Sheller said to Loveland that he wanted Blough to pay the note and thought he would do so if the plaintiffs would give him a little time, but that if the plaintiffs must have their money, he would go to the bank and get it; that he would see it paid if Blough did not pay it.

We think it very doubtful whether this evidence was sufficient to justify the submission to the jury of any proposition in relation to the $300 note.   In Shaver v. Ehle, 16 John. 201, a person called on the maker of a note payable to A or bearer, and demanded payment, but neither showed the note nor mentioned the amount or date of it, and the maker ac-

knowledged that he had given a note to A, and that he would pay it at a future day; it was held that this was not a sufficient admission of the execution of the note to supersede the necessity of proving it by the subscribing witness.

So, in Palmer v. Manning, 4 Denio, 131, the evidence to prove the making of a promissory note, purporting to be signed by the defendant, and payable to the bearer, was that the plaintiff's agent called on the defendant with the alleged note in his pocket, but which he did not exhibit, and told him he had a note for a certain amount against him, which he wanted the defendant to pay, and the defendant said he had given such a note and would pay it if the plaintiff would make a small deduction and indulge him as to time; and it was held that the identity of the note was not proved, and that the evidence did not tend to show that the defendant admitted that he executed the note produced on the trial.

The foregoing cases are cited with approval and their authority adopted by the Supreme Court in Glazier v. Streamer, 57 Ill. 91. There, to prove that a note which was claimed to have been obtained by fraud and circumvention was the genuine note of the defendant, the justice of the peace before whom the suit was originally brought, testified to an admission made to him by the defendant out of court, in respect to the genuineness of *a* note, when no note was exhibited to him, and it was held that the justice's evidence, even if unexplained, was not sufficient to warrant a verdict in favor of the validity of the note.

In the light of these authorities, we are unable to see how Sheller's admission or promise in relation to a note not produced or identified, even if unexplained and undisputed, could warrant a finding either that Sheller had ratified the forgery of his name thereto, or estopped himself from denying his liability thereon.

The second instruction is clearly inapplicable to any evidence in the case. It lays down the abstract proposition that, if a party signs his name to a blank paper and delivers it, with authority to fill the blank above his signature with a note or bill, to a specified person or firm, and the person re-

ceiving it fills it out to a different person, and it is passed in the course of business without notice of the facts, the maker is bound by the instrument.    There is no pretense by either party that the note in suit was executed in the manner here indicated.    The only note shown to have been executed in blank, was a note for $200, in which the name of the payee was blank when Sheller's signature was appended thereto. But that note and the mode of its execution were matters purely collateral to the issues in this case, and no question in relation thereto could properly be submitted to the jury.    An instruction based upon no evidence, and raising a theory of law not in the case, could only have a tendency to confuse and embarrass the jury, and should not have been given.

The fourth instruction attempts to state the doctrine of equitable estoppel, but states it inaccurately.    That doctrine, as formulated by Lord Denman, in Pickard v. Sears, 6 A. & E. 469, is as follows:    "Where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."    This statement of the rule has been almost uniformly adopted in this and other States, and as an example of its approval in this State, the recent case of Hill v. Blackwelder, 113 Ill. 283, may be cited.

The fourth instruction is a clear departure from this rule. That holds that where a person, by his words or conduct, voluntarily, knowingly and intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as *to change his previous condition of mind*, the person inducing *such belief* will be estopped from afterward denying the existence of such state of things to the prejudice of the person so acting.    The foundation of the doctrine of equitable estoppel is, the necessity of preventing the consummation of the fraud which would result if a person who, by his words or conduct, has induced another to act so as to change his previous position, should afterward be permitted to deny the existence of the state of

things upon the faith of which the other party has so acted. But it would certainly be a novel doctrine to hold that a party may invoke the rule of equitable estoppel, where he has not been induced to change his previous position, but only to change his previous condition of mind. By merely changing his condition of mind or adopting a particular belief, no rights are lost or put in jeopardy, since by correcting his state of mind when the truth is ascertained, he is placed completely *in statu quo.*

But we find no evidence in the case which calls for an application of the doctrine of equitable estoppel. Even if it be true that Sheller promised to pay the note in question if time should be given Blough, there is no evidence that the plaintiffs acted upon that assurance. It is only claimed that they were thereby induced to postpone bringing suit on the note. It is true suit was not brought until after the expiration of two years from that time, but we fail to find any evidence that such delay was induced by the words or conduct of Sheller, or that by their delay they lost any security or were otherwise prejudiced. It follows that none of the instructions on the subject of estoppel should have been given, upon the evidence as it appears in the record.

It is insisted that the verdict is contrary to the preponderance of the evidence, and that the judgment should be reversed for that reason. As the case must be submitted to another jury, we forbear discussing the weight of the evidence, but for the error in giving the foregoing instructions, the judgment will be reversed and the cause remanded.

Judgment reversed.